IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01945-WJM-CBS

TYLER SANCHEZ,

      Plaintiff,

v.

DETECTIVE JOE RYAN HARTLEY,
DETECTIVE RYAN WOLFF,
DETECTIVE MIKE DUFFY,
DETECTIVE HEATHER MYKES, and
INVESTIGATOR MICHAEL DICKSON, in their individual capacities,
BOARD OF COUNTY COMMISSIONERS OF DOUGLAS COUNTY,
DOUGLAS COUNTY SHERIFF'S OFFICE, and
OFFICE OF THE DISTRICT ATTORNEY FOR THE EIGHTEENTH JUDICIAL DISTRICT,

      Defendants.
_____

## DEFENDANTS' JOINT MOTION TO DISMISS
_____

Defendants DETECTIVE JOE RYAN HARTLEY and DETECTIVE RYAN WOLFF ("Parker Defendants"), DETECTIVE MIKE DUFFY, DETECTIVE HEATHER MYKES, INVESTIGATOR MICHAEL DICKSON, THE BOARD OF COUNTY COMMISSIONERS OF DOUGLAS COUNTY, THE DOUGLAS COUNTY SHERIFF'S OFFICE, and THE OFFICE OF THE DISTRICT ATTORNEY FOR THE EIGHTEENTH JUDICIAL DISTRICT, hereby submit their motion to dismiss Plaintiff's Amended Complaint and Jury Demand pursuant to Fed. R. Civ. P. 12(b)(6).

## STATEMENT PURSUANT TO WJM REVISED PRACTICE STANDARD III(D)(1)

Pursuant to WJM Revised Practice Standard III(D)(1), undersigned counsel state that they discussed the issues raised in this motion with counsel for Plaintiff.  Plaintiff agreed to dismiss that part of the claim premised on the Fifth Amendment.  Plaintiff otherwise opposes this motion.

## NATURE OF THE CASE

Plaintiff Tyler Sanchez filed his Complaint against Defendants Detective Joe Ryan Hartley, Detective Ryan Wolff, Detective Mike Duffy, Detective Heather Mykes, Investigator Michael Dickson, the Board of County Commissioners of Douglas County, and the Douglas County Sheriff's Office, on July 22, 2013.  Plaintiff filed an unopposed motion to amend his complaint September 9, 2013, adding the Office of the District Attorney for the Eighteenth Judicial District Attorney's Office (hereinafter the District Attorney's Office) as a Defendant. Plaintiff's Amended Complaint asserts only one claim against all Defendants: Malicious Prosecution in Violation of the Fourth Amendment, Fifth Amendment, and Fourteenth Amendment Procedural Due Process under 42 U.S.C. § 1983.  (Doc. 24.)  On September 18, 2013, the Parties filed a Stipulated Motion for Dismissal with Prejudice of Plaintiff Sanchez's Fifth Amendment Claim (Doc. 27), which was granted on September 18, 2013. (Doc. 28.)

## ALLEGATIONS IN THE COMPLAINT

Plaintiff alleges that he is cognitively and developmentally disabled and that his disorders "make it difficult for him to provide accurate information in response to

2

questioning by authority figures and make him particularly susceptible to making false and inculpatory statements at the suggestion of authority figures." (Doc. 24 at pp. 3, 4 ¶¶ 13, 15.)

A sexual assault of an eight year old girl was reported to the Douglas County Sheriff's Office on July 10, 2009. (*Id.* at p. 5, ¶ 18.) A trespass at private property in the Stonegate neighborhood in Parker, Colorado, was reported at approximately 12:40 a.m. on July 17, 2009, to local law enforcement. Defendants Wolff and Hartley responded to the call and began interviewing Plaintiff in his driveway at approximately 1:18 a.m. (*Id.* at p. 5, ¶¶ 21, 22.)[1]

Plaintiff alleges that Defendants Wolff and Hartley "repeatedly suggested to Mr. Sanchez specific details about the . . . trespass" and that they had to "ask Mr. Sanchez repeated questions before he allegedly described the crime by confirming or repeating back the information he was provided" by Defendants. (*Id.* at p. 6, ¶ 23.) Plaintiff further alleges that Defendants Wolff and Hartley "knew that Mr. Sanchez suffered from some type of mental impairment and limited intelligence" and, further, that they "knew that Mr. Sanchez was not capable of providing accurate information in response to their questions and that Mr. Sanchez was susceptible to pressure to agree with statements they made to him." (*Id.* at p. 6, ¶ 24.)

Defendants Wolff and Hartley arrested Plaintiff for second degree criminal trespass and took him to the Douglas County Jail, where he was advised of his *Miranda* rights and

---

1       Defendants Wolff and Hartley are Detectives with the Parker Police Department and were assigned to the Douglas County Sheriff's Office Pattern Crimes Unit. (*Id.* at p. 2, §§ 5, 6.)

signed a waiver, although Plaintiff asserts that he did not understand the verbal or written statement of rights.  Defendants Wolff and Hartley continued interviewing him regarding the trespass of that night as well as other burglaries and trespasses and also the July 10, 2009, sexual assault.  Plaintiff alleges that Defendants Wolff and Hartley did this despite knowing that the "sexual assault victim's identification of her assailant did not remotely match Mr. Sanchez."  (*Id*. at pp. 6, 7 ¶¶ 25-27.)

Plaintiff alleges that he falsely confessed to certain details and to other burglaries and trespasses, and that Defendants Wolff and Hartley knew that Plaintiff's "multiple confessions were unlikely to be accurate given that they contradicted witnesses' descriptions of events."  (*Id*. at p. 8 ¶¶ 30, 31.)  Plaintiff further alleges that Defendants Wolff and Hartley knew that Plaintiff's statements were not "knowing or voluntary and had been coerced."  (*Id*.)

Following Defendants Wolff and Hartley's interview of Plaintiff, Defendants Heather Mykes and Mike Duffy of the Douglas County Sheriff's Office were assigned to the investigation of the case and interviewed Plaintiff later in the morning of July 17, 2009. Defendants Wolff and Hartley had briefed Defendants Mykes and Duffy and provided them with a progress report.  (*Id*. at pp. 9-10, ¶¶ 35-36.)  During the interview, Mr. Sanchez offered to take a lie detector test. (*Id*. at p. 12, ¶ 46.)

On July 18, 2009, Detectives Mykes and Duffy transported Mr. Sanchez to the District Attorney's Office for a polygraph examination, to be taken by District Attorney Investigator Michael Dickson. (*Id*. at p. 14, ¶ 51.) Before the polygraph examination,

Detective Mykes and Duffy briefed Investigator Dickson about the on-going investigation. This briefing, coupled with Mr. Sanchez's affect and demeanor, allegedly supplied Investigator Dickson with the knowledge that "Mr. Sanchez was not capable of providing accurate information in response to his questions." (*Id*. at p. 15 ¶ 54.) Investigator Dickson then conducted and video-taped the polygraph examination.  (*Id*. at p. 20, ¶ 71.)  After the polygraph, Mr. Sanchez drafted a brief statement confessing to breaking into the sexual assault victim's house, but not to sexually assaulting her.  (*Id*. at p. 17, ¶ 60.)  Investigator Dickson is not alleged to have any further interactions with Mr. Sanchez, nor did Investigator Dickson testify at any subsequent hearings.  Nonetheless, Plaintiff alleges in his Amended Complaint that the District Attorney's Office failed to train Investigator Dickson to conduct polygraph examinations properly without coercion, (*Id*. at p. 17, ¶ 61) especially when examining "vulnerable suspects."  (*Id*. at p. 28, ¶ 101.)

A misdemeanor summons and complaint for the trespass charge was filed by the District Attorney on July 20, 2009.  (*Id*. at p. 21, ¶ 73.)  On July 22, 2009, Detective Mykes drafted and signed an affidavit in support of a warrant for Mr. Sanchez's arrest on three felony charges relating to the sexual assault, and, the same day, the District Attorney's Office filed a Complaint and Information formally charging three counts relating to the burglary and sexual assault.  (*Id*. at p. 22, ¶ 75, 76.)

Plaintiff further alleges that Defendants Wolff, Hartley, and Dickson assisted Defendant Mykes in drafting the affidavit for an arrest warrant relating to the trespass charge and that Defendant Wolff falsely testified during a preliminary hearing regarding the

5

knowing and voluntary nature of Plaintiff's statements and that he did not see any indications that Plaintiff had any mental health issues.  (*Id*. at pp. 23, 24, ¶¶ 80-82.) Defendants Mykes, Duffy, and Dickson allegedly intentionally omitted information about Mr. Sanchez's obvious disabilities and known seizure disorder when drafting the affidavit (or assisting with drafting the affidavit) and communicating with the District Attorney's Office. (*Id*. at pp. 23-24, ¶ 80.)

The Douglas County Court conducted a three-day preliminary hearing regarding the felony charges on March 30, April 27, and April 28, 2010, at which time the court "found that there was probable cause to pursue all four felony charges against Mr. Sanchez."  (*Id*. at p. 24, ¶¶ 81, 84.)

Plaintiff asserts that, as a result of the false charges brought against him, he has suffered "extreme emotional distress, including depression, anxiety, humiliation, extreme feelings of guilt, and exacerbation of his preexisting disorders," as well as damage to reputation, lost wages, and costs for things such as attorneys' fees and GPS monitoring. (*Id*. at p. 26, ¶¶ 88-89.)

## LEGAL ARGUMENT AND AUTHORITY

### I.    STANDARD OF REVIEW

In considering a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the Supreme Court requires that a complaint contain enough allegations of fact, taken as true, "to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "[M]ere 'labels and conclusions' and

'a formulaic recitation of the elements of a cause of action' will not suffice." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190-91 (10th Cir. 2012) (quoting *Twombly*, 500 U.S. at 555.)  In applying this standard, the Tenth Circuit has held that where allegations in a complaint "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).  Further, the Tenth Circuit has held that "[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011).

While the 12(b)(6) standard may not always require that a plaintiff establish a *prima facie* case in his complaint, the elements of each alleged cause of action help to determine whether the plaintiff has set forth a plausible claim. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002); *see also Twombly*, 550 U.S. at 570.  It is, however, "not . . . proper to assume that the plaintiff can prove facts that it has not alleged or that defendants have violated . . . laws in ways that have not been alleged." *Twombly*, 550 U.S. at 563 n. 8 (quoting *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519 (526 (1983)).

## II.   PLAINTIFF'S CLAIM AGAINST DEFENDANTS FOR MALICIOUS PROSECUTION SHOULD BE DISMISSED.

Plaintiff's only claim against all Defendants is for Malicious Prosecution in violation of the Fourth Amendment and Fourteenth Amendment.  As set out in Section B, below, such claim should be dismissed against all Defendants.  As set out in Section C, below,

additional defenses requiring dismissal uniquely apply to certain of the individual defendants.

### A. Legal Consideration

### 1. Parameters of Constitutional Recognition

The constitutional dimension of a malicious prosecution claim is, at best, in controversy within the circuits. We know from the plurality opinion in *Albright v. Oliver*, 510 U.S. 266 (1994), that such claim has little support under a substantive due process analysis. *Id*. at 275 (holding that "substantive due process, with its 'scarce and open-ended guideposts,'" affords no relief for 1983 action for arrest without probable cause.). Further, where the state provides an adequate post-deprivation remedy — such as a state tort action for malicious prosecution — procedural due process does not provide harbor for a constitutional malicious prosecution claim. *See* S. Nahmod, *Civil Rights and Civil Liberties Litigation, the Law of Section 1983*, § 3:66 (4th ed. 2011) (hereinafter "Nahmod"). *Albright* left open the availability of a malicious prosecution claim under the Fourth Amendment as the plurality opinion expressly took no stand on this issue.

On the scope of a Fourth Amendment malicious prosecution claim, the circuits differ. Nahmod at § 3:67. The Tenth Circuit has considered the post-*Albright* dimensions of a Fourth Amendment malicious prosecution claim. In *Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004), the court recognized the Fourth Amendment as the source of constitutional law for the "initial seizure" but noted that "at some point after arrest" the constitutional analysis shifts to the Fourteenth Amendment's due process clause. *Id*. at 1285-86. The court did

not reach the issue of where the Fourth Amendment right ended and the Fourteenth Amendment right began as it was not argued by the parties on appeal. *Id*. at 1286.

In *Mondragon v. Thompson*, 519 F.3d 1078 (10th Cir. 2008), the Tenth Circuit reached the question unanswered in *Pierce*. Therein, the Tenth Circuit clearly divided the line between a claim arising under the Fourth Amendment and a claim arising under the Fourteenth Amendment's Due Process Clause:

> The period of time between an unlawful arrest and the institution of legal process forms one constitutional claim, arising under the Fourth Amendment. That claim accrues when the plaintiff is released or legal process is instituted justifying that imprisonment. The period of time between the institution of that process and its favorable termination - through acquittal, habeas corpus, voluntary dismissal, etc. - forms a second claim, arising under the Due Process Clause. That claim accrues, at the earliest, when favorable termination occurs.

*Id.* at 1083.

*Mondragon* expressly did not address what impact a viable state remedy might have on the malicious prosecution claim sounding under the Fourteenth Amendment due process clause. *See id*. at n. 5 ("Because the only issue on this appeal is the timeliness of Mr. Mondragon's claim, not its merits, we do not decide whether additional requirements, such as the existence of adequate state law remedies, might apply to a procedural due process claim."). However, the answer to this question was suggested by Justice Kennedy's concurrence in *Albright* in which he stated that "our precedents make clear that a state actor's random and unauthorized deprivation of [Fourteenth Amendment due process interests] cannot be challenged under 42 U.S.C. § 1983 so long as the State provides an adequate post deprivation remedy." *Albright*, 510 U.S. at 284. Citing, in part,

9

Justice Kennedy's concurrence, the 10th Circuit in *Becker v. Kroll*, 494 F.3d 907 (10th Cir. 2007) held that the plaintiff had not suffered any deprivation of liberty in violation of her procedural due process rights because Utah law provided an adequate post deprivation remedy to protect the plaintiff's non-Fourth Amendment liberty interests. *See also Myers v. Koopman*, 2012 WL 5456410 * 6 (D. Colo. Nov. 8, 2012) ("Under *Becker*, the existence of [malicious prosecution as a] post-deprivation state tort remedy precludes Myers from asserting a malicious prosecution claim against Koopman under the Fourteenth Amendment").

## 2.    Statute of Limitations

*Mondragon* expressly determined that "Fourth Amendment claims and due process claims for unconstitutional imprisonment are subject to special federal rules of accrual" and, as noted above, that the Fourth Amendment claims accrued "when the plaintiff is released or legal process is instituted justifying that imprisonment." *Mondragon*, 519 F.3d at 1082-1083. While Plaintiff, here, attempts to characterize the acts of Defendants leading to his arrest as a malicious prosecution claim, *Mondragon* counseled that these claims are analogous to false arrest or false imprisonment claims. *Id*. at 1082. Malicious prosecution claims were said to arise "[a]fter the institution of legal process." *Id*. at 1083. In any event, Fourth Amendment claims will accrue for purposes of the statute of limitations when the plaintiff is released or legal process justifying the imprisonment is instituted.

Although 42 U.S.C. § 1983 does not contain a statute of limitations, the United States Supreme Court and the Colorado General Assembly have addressed the issue. In

*Owens v. Okure*, 488 U.S. 235 (1989), the United States Supreme Court held that "the residual or general personal injury statute of limitations applies." *Id*. at 236.

In Colorado, the "residual or general personal injury" statute of limitations is the two year statute of limitations set out in C.R.S. § 13-80-102(g), (I). *See Fogle v. Pierson*, 435 F.3d 1252 (10th Cir. 2006).

### 3.   Probable Cause

"[T]he existence of probable cause is a complete defense.  The defendant in a suit based on malicious prosecution may have probable cause for the filing of the charges even though subsequent events may prove such charges to be erroneous. The existence of probable cause is alone sufficient to relieve a defendant of a charge of malicious prosecution." *Harvey v. Carter*, 2003 WL 2197911 (D. Colo. 2003) citing *Anthony v. Baker*, 808 F. Supp. 1523 at 1526 (D. Colo. 1992) and *Montgomery Ward & Co. v. Pherson*, 272 P.2d 643 at 646 (Colo. 1954).  *See also, Novitsky v. City of Aurora,* 491 F.3d 1244, 1257-58 (10th Cir. 2007); *and Hartman v. Moore*, 547 U.S. 250, 266 (2006).

### 4.   Qualified Immunity

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Because qualified immunity is "an *immunity from suit* rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

11

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Court mandated a two-step procedure for resolving government officials' qualified immunity claims:   First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right.   Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendants' alleged misconduct.   More recently, the United States Supreme Court reconsidered this two-step procedure, and concluded that:

> ...while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory.   The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.

*Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

B.   **Discussion**

1.   **Plaintiff's Fourth Amendment Claim Is Barred By the Two Year Statute of Limitations**

The United States Supreme Court has not expressly recognized a Fourth Amendment based claim for malicious prosecution.   However, as noted, the Tenth Circuit has recognized such a claim.[2]

*Mondragon* made clear that the Fourth Amendment governs the time between an allegedly unlawful arrest and the beginning of criminal proceedings and, further, that such

---

2      Defendants recognize the Tenth Circuit's position on this issue but also note the division of the Circuits on this issue and preserve this issue for purposes of appeal.

a claim "accrues when the plaintiff is released or legal process is instituted justifying that imprisonment." *Mondragon*, 519 F.3d at 1083.  Following his initial arrest by Defendants Wolff and Hartley, Plaintiff was charged with a misdemeanor trespass by the District Attorney's office via the filing of a summons and complaint on July 20, 2009.  Accordingly, Plaintiff's claim would have accrued on that date.[3]

Plaintiff did not file his Complaint in the present action until July 22, 2013, over four years following July 20, 2009.  His claim against Defendants is properly classified as a Fourth Amendment claim and is therefore barred by the two-year statute of limitations applicable to § 1983 claims in Colorado.

### 2.   Plaintiff's Fourteenth Amendment Malicious Prosecution Claim is Barred by Availability of an Adequate State Remedy.

To the extent Plaintiff's claim against Defendants is based on the Fourteenth Amendment, Colorado provides a post-deprivation remedy in the form of an action for malicious prosecution at common law.  *See Myers*, 2012 WL 5456410 at * 6 ("Colorado recognizes the tort of malicious prosecution").  Accordingly, Plaintiff does not have a viable constitutional claim under the Fourteenth Amendment.  As in *Myers*, "the existence of [malicious prosecution as a] post-deprivation state tort remedy precludes Myers from asserting a malicious prosecution claim against Koopman under the Fourteenth Amendment.").  *Id.*

---

3   Even if the Court were to choose to use the probable cause hearing as the date that legal process for the arrest was undertaken it would not alter the analysis here as such hearing occurred on April 28, 2010.  See Doc. 24 at p. 24, ¶ 81.

**3.     Plaintiff's Claim is Barred as Probable Cause was Conclusively Determined by the Court and Plaintiff is Not Entitled to Re-litigate the Issue.**

Even if Plaintiff's claim for Malicious Prosecution survived the statute of limitations, it must fail as a matter of law because, in this case, it is undisputed that the Douglas County Court held a three-day preliminary hearing and found probable cause on April 28, 2010.  (Doc 24 at p. 24,,¶¶ 81 and 84).   This is true regardless of whether Plaintiff asserts his claim under the Fourth or the Fourteenth Amendment.  The law is very clear that "the existence of probable cause is a complete defense" to a malicious prosecution claim. *Harvey*, 2003 WL 21979111 (D. Colo. 2003) *citing Anthony*, 808 F. Supp. at 1526; and *Montgomery Ward*, 272 P.2d at 646; *see also, Novitsky,* 491 F.3d at 1257-58; *and Hartman*, 547 U.S. at 266.

Plaintiff alleges that his weak-mindedness and false confession were the basis for this finding.  However, Plaintiff raised this mental status issue early and often, including at the probable cause hearing itself (Doc. 24 at p. 24, ¶ 81).  Plaintiff is not entitled to re-litigate that issue.  Having fully litigated the issue in the state court, Plaintiff is collaterally estopped from re-opening the probable cause hearing.  Under analogous circumstances, the United States Supreme Court held that a defendant was collaterally estopped from challenging a search in federal court under §1983 when the state court had already determined that there was probable cause to support the search warrant.  *See Allen v. McCurry,* 449 U.S. 90, 102 (1980)*; and, Hubbert v. City of Moore,* 923 F.2d 769, 772-73 (10th Circuit 1991).  *See also, White v. Walker,* 2011 WL 941060 (D. Colo. March 16, 2011)*, citing, Montgomery Ward,* 272 P.2d at 646.

Exceptions to this rule require a type of egregious conduct not present here.  Plaintiff has not alleged that the Defendants who testified at the preliminary hearing lied about what Plaintiff told them. Instead, Plaintiff alleges only that the testifying Defendants Wolff and Mykes "falsely claimed" that they "had no indication that Mr. Sanchez was mentally compromised" and that "it was not possible Mr. Sanchez's confession was false." (Doc. 24 at p. 24, ¶¶ 82-83.)   Statements from fact witnesses during a preliminary hearing speculating as to the possibility of false confessions or a suspect's unstated mental processes do not rise to the level of undermining a probable cause determination.  Such statements could not, as a matter of law, have "tainted the proceedings as to constitute 'egregious conduct' and deny him his due process rights to a probable cause determination.'" *Anthony*, 767 F.2d at 663.

### 4.    Individual Defendants are Entitled to Qualified immunity.

Furthermore, even if Plaintiff's claim managed to survive the significant bars of the statute of limitations and the probable cause determination, there is simply no clearly-established constitutional right that is alleged to have been violated.  Plaintiff's basic premise seems to be that these peace officers should have immediately recognized a problem that required two years, two judges, two psychiatrists, and much disagreement finally to agree upon – that Plaintiff's waiver of his *Miranda* rights may not have been knowingly and intelligently made.  (*See* Doc. 24 at p. 25, ¶85, regarding March 9, 2012, receipt of Colorado Mental Health Institute report and subsequent dismissal.)

Aside from a lack of a clearly-established constitutional duty for peace officers to render psychiatric evaluations, imposing such a duty would open an undesirable Pandora's

Box.   Each time a defendant was found to be not guilty by reason of insanity, or incompetent to stand trial, the investigating officers would be subject to civil suit under the theory that they should have quickly discerned a mental limitation and simply quit the investigation.   This would ignore the basic truism that even unintelligent people sometimes commit crimes, and that determinations of mental soundness generally require a lengthy psychiatric evaluation that peace officers are simply not qualified to render.

Under the circumstances, Defendants are entitled to qualified immunity.  First, as set forth above, Plaintiff is unable to prevail on any claims for constitutional violations against Defendants.   Second, at the time of the alleged actions noted in the Complaint, it was not clearly established that any such actions would violate Plaintiff's constitutional rights under the Fourth or Fourteenth Amendment. Defendants are therefore entitled to qualified immunity.[4]

**C.     Defendants are Entitled to Dismissal on Additional, Alternative Grounds.**

**1.     Eleventh Amendment Immunity**

The Eleventh Amendment to the United States Constitution precludes Plaintiff from suing the District Attorney's Office and divests this Court of subject matter jurisdiction. The

_____

4     As discussed above, case law regarding the availability and parameters of a constitutional malicious prosecution claim is unclear.  The United States Supreme Court noted in *Wallace v. Kato*, 549 U.S. 384, 390 n. 2 (2007), that it had "never explored the contours of a Fourth Amendment malicious-prosecution suit under § 1983."  Nor did the *Wallace* decision undertake such exploration.  *Id.*  Indeed, it is not finally resolved by the Supreme Court that the United States Constitution supports a claim for malicious prosecution.  Even if supported, however, its undefined parameters relegate it as a right not yet clearly established.

Eleventh Amendment to the United States Constitution states:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

Therefore, the Eleventh Amendment precludes federal jurisdiction over state officials acting in their official capacities as to retroactive monetary relief. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 102-03, 105-06 (1984). 42 U.S.C. § 1983 does not change the immunity analysis or the result:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity, or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

*Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (U.S. 1989) (internal citations omitted). An entity asserting Eleventh Amendment immunity has the burden to demonstrate its entitlement. *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.,* 466 F.3d 232, 237 (2d Cir. 2006).

Plaintiff alleges the 18th Judicial District Attorney's Office improperly trained its employees to conduct polygraph examinations. *See* Doc. 24 at pp. 3, 17, 28, ¶¶ 12, 61, 101. The District Attorney's Office is an arm of the state protected by the Eleventh Amendment.[5] *See Rozek v. Topolnicki*, 865 F.2d 1154, 1158 (10th Cir. 1989) (affirming

---

5        The District Attorney's Office is aware that the district court determined in *Masters v. Gilmore*, 663 F. Supp. 2d 1027, 1054 (D. Colo. 2009) that the Eighth Judicial District Attorney's Office was not entitled to Eleventh Amendment Immunity. However, the District Attorney's Office believes *Masters* wrongly decided the issue and is against the

the District Court's finding that the 18th Judicial District Attorney's Office was a state agency protected by Eleventh Amendment Immunity); *Van De Weghe v. Chambers*, 2013 WL 656826 (D. Colo. Feb. 22, 2013); *Romero v. Boulder County DA's Office*, 87 Fed. Appx. 696, 698 (10th Cir. 2004); *Bragg v. Office of the DA*, 704 F. Supp. 2d 1032, 1067 (D. Colo. 2009); *Suggs v. Adams*, 2013 WL 500444 (D. Colo. Feb. 11, 2013); *Guinn v. Unknown, Jefferson County Deputy Atty.,* 2013 WL 1137125 (D. Colo. Mar. 19, 2013). Consequently, the Eleventh Amendment bars Plaintiff's suit against the District Attorney's Office for monetary relief. This Court should dismiss Plaintiff's claim against the District Attorney's Office.

### 2.      Entity Liability

The claims against the Douglas County Board of County Commissioners ("BOCC") and the Douglas County Sheriff's Office must be dismissed for a number of reasons: (1) the BOCC is not a proper party; (2) there is no underlying Constitutional violation to support the claim against the Sheriff's Office; and (3) there is no allegation sufficient to assert entity liability.

#### a.      The BOCC is not a proper party

The claim against the BOCC, although not supported with any specific factual allegations, is that they failed to train or supervise the deputies adequately.  This is not

---

weight of 10th Circuit 11th Amendment jurisprudence, both before and after the *Masters* opinion. The 10th Circuit Court of Appeals has not reviewed the District Court's opinion, as *Masters* was resolved while an interlocutory appeal was pending. The District Attorney's Office will supplement and further explain its position if Plaintiff intends to rely on *Masters*.

sufficient to state a claim against the BOCC because Plaintiff must show that the BOCC has some supervisory authority over the Sheriff and his deputies. *See Myers v. Koopman*, 2011 WL 650328, at *11 (D. Colo. Feb. 11, 2011).  Although it is undisputed that the BOCC has the duty and authority to appropriate funds for the operation of the sheriff's office, under Colorado law only a sheriff has the right to supervise and control the sheriff's deputies. *Tunget v. Board of County Com'rs of Delta County*, 992 P.2d 650, 652 (Colo. App.1999); *see also, Bristol v. Bd. of Cnty. Com'rs of Cnty. of Clear Creek*, 312 F.3d 1213, 1219 (10th Cir. 2002). "[O]nly a [S]heriff has the right to supervise and control the [S]heriff's deputies" under Colorado law.  *Myers*, 2011 WL 650328, at *11 (citing *Tunget*, 992 P.2d at 652; and *Bristol*, 312 F.3d at 1219).  Accordingly, "the BOCC does not have the legal authority to control or supervise the [S]heriff and the [S]heriff's deputies." *Myers*.

> b.      There is No Underlying Constitutional Violation.

With respect to the Sheriff's Office, it is well-established that "[a] municipality [or in this case, county] may not be held liable where there was no underlying constitutional violation by any of its officers." *Hinton v. City of Elwood, Kan.,* 997 F.2d 774, 782 (10th Cir. 1993), *citing, City of Los Angeles v. Heller*, 475 U.S. 796, 799, (1986); *Apodaca v. Rio Arriba County Sheriff's Dept.*, 905 F.2d 1445, 1447-48 (10th Cir. 1990); *Watson v. City of Kansas City*, 857 F.2d 690, 697 (10th Cir. 1988).

As explained at-length above, Plaintiff's claim for malicious prosecution fails as a matter of law because it is undisputed that the court found probable cause and that the existence of probable cause is a complete defense.

19

Additionally, in order to state a claim for malicious prosecution, Plaintiff would be required to prove that Detectives Mykes and Duffy "acted with malice." *Novitsky,* 491 F.3d at 1258; *see also, White,* 2011 U.S. Dist LEXIS 27554*, citing Montgomery Ward,* 272 P.2d at 646 ("[t]he existence of probable cause is alone sufficient to relieve a defendant of a charge of malicious prosecution.  Both malice and want of probable cause must be proved to justify a recovery").  There is no indication or factual allegation of malice.

Plaintiff cannot state a claim against the deputies as a matter of law.  In the absence of an underlying claim against its deputies, the Douglas County Sheriff's Office has no liability.

c.      There is No Basis for Entity Liability.

Finally, even if there were a constitutional violation, Plaintiff's allegation, that Deputy Mykes was not trained on how to apply interrogation techniques "to suspects who may be vulnerable to coercion due to disabilities or low IQ" (Doc. 24 at p. 20, ¶70) is not sufficient to state a claim for entity liability based on a malicious prosecution claim.  "Failure to supervise and failure to train are treated the same in the Tenth Circuit. To succeed on their failure to train and/or supervise claim, plaintiffs must demonstrate the supervisor's inaction was the result of deliberate indifference." *Doe v. Boulder Valley Sch.*, 2012 WL 4378162 (D. Colo. Sept. 25, 2012) citing *Whitewater v. Goss*, 192 Fed. Appx. 794, 797 (10th Cir. 2006) and *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006).  Plaintiff's allegation, that on this one occasion, a deputy was inadequately trained, even if true, would not support a finding of deliberate indifference on the part of the Douglas County Sheriff's Office.

20

## CONCLUSION

WHEREFORE, for the reasons set forth above, Defendants request that Plaintiff's claim against them be dismissed.  Defendants further request that the caption be amended as appropriate as a result of any order in this matter and also request their costs and attorney fees, and such further relief as may be available.

Respectfully submitted,


Date:  September 23, 2013                s/Ann B. Smith
                                         Gordon L. Vaughan
                                         Ann B. Smith
                                               VAUGHAN & DeMURO
                                               111 South Tejon, Suite 545
                                               Colorado Springs, CO 80903
                                               (719) 578-5500 (phone)
                                               (719) 578-5504 (fax)
                                               vnd@vaughandemuro.com (e-mail)
                                         *Attorneys for Defendants Wolff and Hartley*


Date:  September 23, 2013                 s/Kelly Dunnaway
                                         Kelly Dunnaway
                                               Douglas County Attorney's Office
                                               100 Third Street
                                               Castle Rock, CO 80104
                                               (303) 660-7414 (phone)
                                               (303) 688-6596 (fax)
                                               kdunnawa@co.douglas.co.us (e-mail)
                                         *Attorneys for Defendants Duffy, Mykes, Board of
                                         County Commissioners, and Sheriff's Office*

21

Date:  September 23, 2013                 s/Keith Goman                                    
                                          Andrew A. Ringel
                                          Keith Goman
                                                  Hall & Evans, L.L.C.
                                                  1125 17th Street, Suite 600
                                                  Denver, CO 80202-2052
                                                  (303) 628-3453 (phone)
                                                  (303) 293-3238 (fax)
                                                  ringela@hallevans.com (e-mail)
                                                  gomank@hallevans.com (e-mail)
                                          *Attorneys for Defendants Dickson and District Attorney's Office*

CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of September, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

**Sarah J. Parady**
sjparady@bc-law.com; labielec@bc-law.com

**Andrew David Ringel**
ringela@hallevans.com; cmecf@hallevans.com; tamborelloa@hallevans.com; troutl@hallevans.com

**Keith M. Goman**
gomank@hallevans.com; mcminnj@hallevans.com

**Kelly Dunnaway**
kdunnawa@douglas.co.us; chancock@douglas.co.us; pfiedler@douglas.co.us

**Christopher Kirk Pratt**
cpratt@douglas.co.us; chancock@douglas.co.us

and I hereby certify that the foregoing was placed in the U.S. Mail, postage prepaid, and addressed to the following:

[none]

s/ Ann B. Smith
Ann B. Smith
     VAUGHAN & DeMURO
     111 South Tejon, Suite 545
     Colorado Springs, CO 80903
     719-578-5500 (phone)
     719-578-5504 (fax)
     vnd@vaughandemuro.com (e-mail)
*Attorney for Defendants Wolff and Hartley*