**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 13-cv-1945-WJM-CBS

TYLER SANCHEZ,

      Plaintiff,

v.

JOE RYAN HARTLEY, Detective, in his individual capacity,
RYAN WOLFF, Detective, in his individual capacity,
MIKE DUFFY, Detective, in his individual capacity,
HEATHER MYKES, Detective in her individual capacity,
MICHAEL DICKSON, Investigator, in his individual capacity,
BOARD OF COUNTY COMMISSIONERS OF DOUGLAS COUNTY,
DOUGLAS COUNTY SHERIFF'S OFFICE, and
OFFICE OF THE DISTRICT ATTORNEY FOR THE EIGHTEENTH
JUDICIAL DISTRICT,

      Defendants.

---

## ORDER GRANTING IN PART DEFENDANTS' JOINT MOTION TO DISMISS

---

      Plaintiff Tyler Sanchez ("Plaintiff") brings this Fourth Amendment malicious prosecution claim[1] against Detective Joe Ryan Hartley ("Hartley"), Detective Ryan Wolff ("Wolff"), Detective Mike Duffy ("Duffy"), Detective Heather Mykes ("Mykes"), and Investigator Michael Dickson ("Dickson") (collectively, the "Individual Defendants"), in their individual capacities, and the Board of County Commissioners of Douglas County ("BOCC"), Douglas County Sheriff's Office ("Sheriff's Office") (together with BOCC, the "Entity Defendants"), and the Office of the District Attorney for the Eighteenth Judicial

---

[1]  The Court previously dismissed Plaintiff's Fifth Amendment claim (ECF No. 28), and Plaintiff has dropped his Fourteenth Amendment claim (ECF No. 46 at 3 n.1 ("Plaintiff Sanchez will not pursue a Fourteenth Amendment claim.")).

District ("District Attorney's Office").  Before the Court is Defendants' Joint Motion to

Dismiss (the "Motion").  (ECF No. 32.)  For the foregoing reasons, the Motion is granted

in part and denied in part.

## I.  BACKGROUND

The following allegations, contained in Plaintiff's Complaint, are accepted as true

for purposes of the Motion.

Plaintiff was 18 years old in July of 2009.  (Compl. (ECF No. 24) ¶ 13.)  He is

cognitively and developmentally disabled.  (*Id.* ¶ 13.)  The Amended Complaint alleges

that:

> [Plaintiff] suffers from a mixed receptive-expressive language disorder,
> borderline intellectual functioning, auditory processing deficits, social
> anxiety, submissive personality characteristics, and hearing impairments.
> His I.Q. tests in the 60s and 70s.  He also suffers from a seizure disorder,
> which requires him to take medication that impairs his memory.

(*Id.* ¶ 14.)

> This combination of disorders impacts [Plaintiff's] ability to listen,
> comprehend, understand, communicate, and apply abstract concepts.
> Additionally, [Plaintiff] has problems with cognitive demands under time
> pressure, problems working with memory, and possesses auditory
> processing deficits.  He also has problems comprehending vocabulary
> and grammar.  His disabilities greatly impact his ability to communicate
> verbally and non-verbally to others.  His disorders particularly manifest
> themselves under pressure, stress, questioning by authorities, and sleep
> deprivation.

(*Id.* ¶ 15.)

A.   The Underlying Events

On July 10, 2009, a mother made a 911 call to the Sheriff's Office and told the

dispatcher that someone had broken into her home and sexually assaulted her eight-

2

year-old daughter (the "July Assault").  (*Id.* ¶ 18.)  The girl described the intruder as an older man, about 40 years old, with brown hair parted down the middle, who was not wearing a hat, did not have any tattoos on his hands or arms, and had white skin.  (*Id.* ¶ 19.)

A.    The Interviews

On July 17, 2009, at approximately 12:40 a.m., Wolff and Hartley responded to a call regarding a prowler on Branham Drive (the "Branham Drive Trespass").  (*Id.* ¶ 21.) Beginning at around 1:18 a.m., Wolff and Hartley began interviewing Plaintiff in his driveway about the Branham Drive Trespass.  (*Id.* ¶ 22.)  During this interview, Wolff and Hartley repeatedly suggested to Plaintiff specific details about the Branham Drive Trespass, then asked Plaintiff to describe the incident back to them.  (*Id.*)  Based on Plaintiff's responses to these questions, Plaintiff was arrested, without a warrant, for second degree criminal trespass and transported to the Douglas County Jail.  (*Id.* ¶ 25.)

At the Douglas County Jail, Wolff and Hartley continued to interview Plaintiff.  (*Id.* ¶ 27.)  Even though Wolff and Hartley knew that Plaintiff bore no resemblance to the perpetrator of the July Assault, they also interviewed Plaintiff to determine whether he had been the perpetrator of that crime.  (*Id.*)  During the interview, Wolff and Hartley led Plaintiff to believe that his DNA had been found in locations which implicated him in the crimes.  (*Id.* ¶ 28.)  They also provided Plaintiff with specific details about the Branham Drive Trespass and the July Assault and asked him exclusively "yes or no" questions regarding whether he committed these criminal acts.  (*Id.* ¶.)  In response to these "yes or no" questions, Plaintiff admitted to entering the home where the July Assault

occurred, but denied sexually assaulting the girl.  (*Id.* ¶ 29.)  During this interview,

Plaintiff also confessed to other burglaries and trespasses under investigation by the

Sheriff's Office.  (*Id.* ¶ 30.)

Later on July 17, 2009, Plaintiff was interviewed by Mykes and Duffy about the

July Assault.  (*Id.* ¶ 35.)  At the time of that interview, Plaintiff had been awake since the

morning of July 16, 2009—roughly 24 hours—with little or no sleep.  (*Id.* ¶ 36.)  Mykes

and Duffy noted that Plaintiff appeared tired during the interview.  (*Id.* ¶ 28.)  They also

observed that Plaintiff had difficultly expressing himself verbally during the interview.

(*Id.* ¶ 39.)

During this interview, Plaintiff attempted to explain to Mykes and Duffy that he

had been coerced by Hartley and Wolff into confessing to crimes he did not commit.

(*Id.* ¶ 41.)  Mykes responded to this by stating, "I know those guys [Hartley and Wolff]

pretty well . . . I know they weren't forcing you to say what you said this morning.  I

know that, okay?"  (*Id.*)

Towards the end of this interview, Plaintiff offered to take a lie detector test,

which was administered by Dickson on July 18, 2009.  (*Id.* ¶¶ 46, 51.)  Dickson began

the polygraph test by questioning Plaintiff to develop questions for the polygraph.  (*Id.* ¶

55.)  While developing the questions, Dickson asked Plaintiff how much he knew about

the sexual assault allegations, and Plaintiff repeated "almost verbatim" what Wolff,

Hartley, Mykes, and Duffy had told him the previous day.  (*Id.* ¶ 55.)  Dickson then

provided Plaintiff with additional information regarding what he believed had happened

during the July Assault.  (*Id.*)

When Plaintiff failed the polygraph test on two questions regarding the July Assault he exclaimed, "But I don't remember any of this.  That's what I'm trying to say." (*Id.* ¶ 58)  Dickson, however, suggested that Plaintiff really meant to say, "It could have happened, but I don't remember."  (*Id.* ¶ 59.)  Plaintiff acceded to this suggestion, and explained, "I fell asleep [on the night of the July Assault] and then I woke up—I woke up the next morning in my bed. . . .   I might have woke up [during the night] out of nowhere . . . And might have done that (the assault) because there's many—there's many things I don't remember doing. . . .  I could have done it . . . I just don't remember. . . .  I could have probably done it in my sleep."  (*Id.*)

After the lie detector test, Plaintiff drafted a brief statement in which he confessed to breaking into the girls home, but not to sexually assaulting her.  (*Id.* ¶ 60.) Mykes and Duffy then re-interviewed Plaintiff in an attempt to fill in missing details from his statements.  (*Id.* ¶ 66.)

C.   Probable Cause

a.   *Trespass Charges*

On July 17, 2009, a Statement in Support of Warrantless Arrest of Plaintiff and a Misdemeanor Summons and Complaint (the "Misdemeanor Complaint") for the Branham Drive Trespass were signed by Detective Cirbo.[2]  (*Id.* ¶ 34.)  These documents were drafted in reliance on Harley and Wolff's statements and opinions about their interviews with Plaintiff, and did not include any information regarding Plaintiff's disabilities and limitations.  (*Id.*)

---

[2]  Detective Cirbo was present when Wolff and Hartley interviewed Plaintiff in his driveway on July 17, 2009 (Compl. ¶ 22), and is not a defendant in this action.

On July 20, 2009, the District Attorney filed the Misdemeanor Complaint.  (*Id.* ¶ 73.)  Hartley and Wolff did not report Plaintiff's known seizure disorder, communication disorder, cognitive limitations, or the resulting unreliability of his confessions to the District Attorney.  (*Id.*)  On the same day, a magistrate judge signed a determination finding probable cause to detain Plaintiff for committing the Branham Drive Trespass.  (*Id.* ¶ 74.)

On January 6, 2010, Mykes drafted and signed an Affidavit for Arrest Warrant on a new felony charge arising from the Branham Drive Trespass.  (*Id.* ¶ 80.)  Mykes did not include any mention of Plaintiff's known seizure disorder, communication disorder, or cognitive limitations in the affidavit.  (*Id.*)  Later that day, the District Attorney filed the Affidavit in Douglas County Court and filed a Felony Complaint and Information on this additional charge on January 7, 2010.  (*Id.*)

b.   *Sexual Assault Charges*

On July 18, 2009, Mykes drafted and signed a Statement in Support of Warrantless Arrest of Plaintiff on three felony charges related to the July Assault.  (*Id.* ¶ 71.)  She later drafted and signed an Affidavit in support of a warrant for Plaintiff's arrest resulting from these charges (the "Mykes Affidavit").  (*Id.* ¶ 75.)  Mykes did not report Plaintiff's known seizure disorder, communication difficulties, or cognitive limitations in the Statement in Support of Warrantless Arrest or Mykes Affidavit.  (*Id.* ¶¶ 71, 75.)  On July 22, 2009, the District Attorney filed a Felony Complaint and Information on the three charges arising from the July Assault.  (*Id.* ¶ 76.)  Mykes, Duffy and Dickson did not report Plaintiff's known seizure disorder, communication disorder,

6

cognitive limitations, or the resulting unreliability of his confessions to the District

Attorney.  (*Id.*)

On July 23, 2009, Plaintiff appeared before a judge for the filing of charges

arising from the July Assault.  (*Id.* ¶ 77.)  The judge reviewed Mykes' Statement in

Support of Warrantless Arrest and the Mykes Affidavit and denied a bond reduction,

based in part upon the allegation that Plaintiff had also committed the Branham Drive

Trespass.  (*Id.*)  The judge also denied a bond reduction on July 31, 2009 for the same

reason.  (*Id.*)

On March 30, 2010, the Douglas County Court began a preliminary hearing

regarding the felony allegations against Plaintiff.  (*Id.* ¶ 81.)  Based on the statements

made by Plaintiff to the Individual Defendants, the court found that there was probable

cause to pursue all four felony charges against Plaintiff.  (*Id.* ¶ 84.)

D.      Termination of Original Action

On March 9, 2012, the District Attorney's Office received the results of an

independent medical examination of Plaintiff by the Colorado Mental Health Institute at

Pueblo ("CMHIP").  (*Id.* ¶ 85.)  The CMHIP report concluded that the inculpatory

statements made by Plaintiff were not made in a knowing and voluntary fashion, but

were rather the result of suggestions made by the Individual Defendants, and that

Plaintiff's disabilities combined with the Individual Defendant's treatment of him

provided a reasonable basis to believe that his confessions were false.  (*Id.*)

The District Attorney's Office dismissed all charges against Plaintiff in April 2012.

(*Id.* ¶ 86.)  The dismissals were based upon the likely falsity of his confessions and the

prosecution's resultant inability to meet its burden of proof.  (*Id.*)  The motions filed by

the District Attorney explained that "based on [Plaintiff's] intellectual disabilities,

cognitive functioning impairments, and speech and language disabilities," his

statements could not be relied upon as evidence and "the People are left with

insufficient evidence" to prove the charges against him.  (*Id.*)

As a result of the charges leveled against Plaintiff, he spent four months (125

days) in detention in the Douglas County Jail, over five months (159 days) subject to

restrictions on his geographic location that prevented him from visiting his own home,

required him to live with relatives, and required GPS monitoring, and nearly two years

(715 days) subject to restrictions on his geographic location that allowed him to return

to live at his family home but restricted his movements and required GPS monitoring.

(*Id.* ¶ 87.)  As a result, he has suffered emotional distress, including depression,

anxiety, humiliation, extreme feelings of guilt, and exacerbation of his preexisting

disorders.  (*Id.* ¶ 88.)  He has also suffered damage to his reputation, lost wages, and

he was required to expend substantial amounts of money on attorneys' fees and costs,

including the costs of GPS monitoring.  (*Id.* ¶ 89.)

E.     Current Action

On these facts, Plaintiff filed this action against Defendants on July 22, 2013.

(ECF No. 1.)  On September 9, 2013, Plaintiff filed an Amended Complaint, asserting

a claim for malicious prosecution in violation of the Fourth Amendment, Fifth

Amendment, and Fourteenth Amendment procedural due process under 42 U.S.C. §

1983.  (Compl. ¶¶ 92-103.)  On September 18, 2013, the Parties filed a Stipulated

Motion for Dismissal with Prejudice of Plaintiff's Fifth Amendment Claim (ECF No. 27),

which the Court granted (ECF No. 28).  On September 23, 2013, Defendants filed the

instant Motion.  (ECF No. 32.)  Plaintiff filed a Response to Defendants' Motion on

October 31, 2013, stating that he will "not pursue a Fourteenth Amendment claim."

(ECF No. 46 at 3 n.1.)  Defendants filed their Reply on November 25, 2013.  (ECF No.

54.)  On July 1, 2014, Defendants filed a Joint Motion for Leave to File Supplemental

Authority (ECF No. 74), which the Court granted (ECF No. 77).

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to

dismiss a claim in a complaint for "failure to state a claim upon which relief can be

granted."  In evaluating such a motion, a court must "assume the truth of the plaintiff's

well-pleaded factual allegations and view them in the light most favorable to the

plaintiff."  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir.

2007).  In ruling on such a motion, the dispositive inquiry is "whether the complaint

contains 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.*

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Granting a motion to

dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the

spirit of the liberal rules of pleading but also to protect the interests of justice."  *Dias v.*

*City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation marks omitted).

"Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual

proof of those facts is improbable, and that a recovery is very remote and unlikely.'"  *Id.*

(quoting *Twombly*, 550 U.S. at 556).

## III.  ANALYSIS

Defendants have moved to dismiss Plaintiff's claim for violation of the Fourth Amendment against all Defendants and argue that: (1) Plaintiff's claim is barred by the two year statute of limitations; (2) Plaintiff's claim is barred because probable cause was conclusively determined by the state court; (3) the Individual Defendants are entitled to qualified immunity; and (4) the District Attorney's Office is protected by Eleventh Amendment Immunity.[3]  (ECF No. 32 at 12-18.)  Defendants also argue that the claims against the Entity Defendants should be dismissed because: (1) the BOCC is not a proper party; (2) there is no allegation sufficient to assert entity liability; and (3) there is no underlying Constitutional violation to support the claim against the Sheriff's Office.  (*Id.* at 18.)  The Court will address Defendants' arguments in turn below.

### A.      Statute of Limitations

Claims under § 1983 are governed by the forum state's statute of limitations. *Wallace v. Kato*, 549 U.S. 384, 387 (2007).  Here, the applicable statute of limitations for Plaintiff's malicious prosecution claims is Colorado's two-year statute of limitations for personal injury actions.  C.R.S. § 13-80-102(1)(g) ("All actions upon liability created by a federal statute where no period of limitation is provided in said federal statute" and "regardless of the theory upon which suit is brought . . . shall be commenced within two years."); *see also Hunt v. Bennett*, 17 F.3d 1263, 1265 (10th Cir. 1994) (finding that "§ 1983 claims are best characterized as personal injury actions and we therefore apply"

---

[3]  Defendants also argue that Plaintiff's Fourteenth Amendment malicious prosecution claim is barred by availability of an adequate state court remedy.  (ECF No. 32 at 13.)  The Court need not address this argument, however, because Plaintiff has voluntarily dropped his Fourteenth Amendment Claim.  (ECF No. 46 at 3 n.1.)

the State of Colorado's two-year statute of limitations).  Although state law governs issues regarding the applicable statute of limitations, federal law determines the date on which the claim accrues and, therefore, when the limitations period begins to run. *Wallace*, 549 U.S. at 388.

Defendants argue that Plaintiff's malicious prosecution claim is analogous to a false arrest or false imprisonment claim, and that his claim, therefore, accrued on July 20, 2009, when Plaintiff was charged with a misdemeanor trespass by the District Attorney's Office via the filing of the Misdemeanor Complaint.  (ECF No. 32 at 10-13 (quoting *Mondragon v. Thompson*, 519 F.3d 1078, 1082-83 (10th Cir. 2008) (explaining that the statute of limitations for a Fourth Amendment claim for false imprisonment begins when the victim is released or legal process is instituted justifying imprisonment).)  Since Plaintiff did not initiate this action until July 22, 2013, over four years after the Misdemeanor Complaint was filed, Defendants contend that his claim is untimely.  (*Id.*)

While Defendants' Motion was pending, the United States Court of Appeals for the Tenth Circuit decided *Myers v. Koopman*, 738 F.3d 1190 (10th Cir. 2013).  In *Myers*, the Tenth Circuit clarified that "[a] claim of malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor." *Id.* at 1194; *see also Margheim v. Buck*, 2014 WL 2206940, at *3 (D. Colo. May 27, 2014) (explaining that a claim for malicious prosecution does not accrue until the proceedings terminate in a plaintiff's favor).

Here, the legal process instituted by Defendants was terminated in favor of Plaintiff in April 2012.  (Compl. ¶ 94.)  As this case was filed within two years of that accrual date, the Court finds that Plaintiff's claim is timely and not barred by the statute of limitations.

**B.     Probable Cause**

"Because the lack of probable cause is an essential element under Colorado law for malicious prosecution, the existence of probable cause is a complete defense to suit based on malicious prosecution."  *Harvey v. Carter*, 2003 WL 21979111, at *2 (D. Colo. May 1, 2003).  Defendants argue that since probable cause was conclusively determined by the state court (Compl. ¶¶ 74, 78), Plaintiff is collaterally estopped from re-litigating the issue (ECF No. 32 at 14 (citing *Allen v. McCurry*, 449 U.S. 90, 102 (1980) ("[C]ollateral estoppel applies when § 1983 plaintiffs attempt to relitigate in federal court issues decided against them in state criminal proceedings.")).

Despite Defendants' argument to the contrary, the determination of probable cause by the state court is not, in and of itself, conclusive evidence of the existence of probable cause.  *See Anthony v. Baker*, 767 F.2d 657, 663 (10th Cir. 1985).  "If police officers have been instrumental in the plaintiff's continued confinement or prosecution, they cannot escape liability by pointing to the decisions of prosecutors or grand jurors or magistrates to confine or prosecute him.  *They cannot hide behind the officials whom they have defrauded*."  *Robinson v. Maruffi*, 895 F.2d 649, 656 (10th Cir. 1990) (emphasis in original) (quoting *Jones v. City of Chi.*, 856 F.2d 985, 994 (7th Cir. 1988).

Plaintiff has pled that his confession was coerced, involuntary and false, and that the Individual Defendants knew as much before process was instituted against him. (Compl. ¶¶ 1, 17, 24, 31, 32, 37, 47, 49, 53, 54, 64, 67, 68.)  These allegations, taken as true for the purposes of a motion to dismiss, show that the prosecutors and state court judge relied upon the Individual Defendants' statements in making their respective probable cause determinations.

As the probable cause determinations depend on the false confessions procured by the Individual Defendants (Compl. ¶¶ 74, 84), they do not insulate Defendants from this action.  Accordingly, the Court rejects Defendants' argument.

## C.     Qualified Immunity

The Individual Defendants assert qualified immunity against Plaintiff's claim. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal citation omitted).  "To survive a motion to dismiss based on qualified immunity, the plaintiff must allege sufficient facts that show—when taken as true—the defendant plausibly violated his constitutional rights, which were clearly established at the time of violation." *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012).

### 1.     Constitutional Violation

Plaintiff's Section 1983 malicious prosecution claim against the Individual Defendants alleges a seizure without probable cause in violation of the Fourth

Amendment.  (ECF No. 46 at 18.)  The Individual Defendants dispute that Plaintiff has

alleged a constitutional violation.  (ECF No. 32 at 15-16) ("[T]here is simply no clearly-

established constitutional right that is alleged to have been violated.").)

When addressing malicious prosecution claims brought pursuant to Section

1983, the Tenth Circuit uses common law elements of malicious prosecution as a

"starting" point for its analysis, but ultimately determines whether the "plaintiff has

proven the deprivation of a constitutional right."  *Novitsky v. City of Aurora*, 491 F.3d

1244, 1257 (10th Cir. 2007).  A malicious prosecution claim under § 1983 includes the

following elements:

> (1) [T]he defendant caused the plaintiff's continued confinement or
> prosecution; (2) the original action terminated in favor of the plaintiff; (3)
> no probable cause supported the original arrest, continued confinement,
> or prosecution; (4) the defendant acted with malice; and (5) the plaintiff
> sustained damages.

*Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008).

The Court finds that the first, second and fifth elements have been satisfied

here.  Plaintiff alleges that the Individual Defendants caused Plaintiff's continued

confinement,[4] that the original action terminated in Plaintiff's favor,[5] and that Plaintiff

---

[4] "As a result of false charges leveled against [Plaintiff], he spent four months (125 days) in detention in the Douglas County Jail . . . ; over five months (159 days) subject to restrictions on his geographic location that prevented him from visiting his own home, required him to live with relatives, and required GPS monitoring; and nearly two years (715 days) subject to restrictions on his geographic location that allowed him to return to live at his family home but restricted his movements and required GPS monitoring."  (Compl. ¶ 87.)

[5] "In two motions filed on April 4, 2012 and April 12, 2012, based upon the CMHIP independent medical examination, the [District Attorney's Office] dismissed all charges against [Plaintiff]."  (Compl. ¶ 86.)

14

sustained damages.[6]

As to the third element, "[o]fficers must have probable cause to initiate a search, arrest, and prosecution under the Fourth Amendment." *Stonecipher v. Valles*, 2014 WL 2937038, at *4 (10th Cir. July 1, 2014). "Probable cause is not a precise quantum of evidence[.]" *Id.* It exists "where the facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information are sufficient to warrant a prudent man in believing that an offense has been or is being committed." *Karr v. Smith*, 774 F.2d 1029, 1031 (10th Cir. 1985). Alternatively stated, there is no probable cause if a reasonable officer knew or should have known that there was not probable cause to bring criminal charges. *See Wilkins*, 528 F.3d at 805 (finding that, where plaintiff alleged that the information in officers' probable cause statement was fabricated, "[u]nder the version of the facts presented by Plaintiffs and accepted by the district court on summary judgment . . . a reasonable officer should have known no probable cause existed without the statements."); *Harris v. Bornhorst*, 513 F.3d 503, 513 (6th Cir. 2008) (holding that the district court erred in concluding that an officer had probable cause because the officer should have known that the confession she relied upon was suspect); *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) (reversing grant of summary judgment on Section 1983 malicious prosecution claim where "a jury could find that [defendant] played a role in initiating the prosecution by

---

[6] "As a result of the false charges brought against him, [Plaintiff] suffered extreme emotional distress, including depression, anxiety, humiliation, extreme feelings of guilt, . . . exacerbation of his preexisting disorders[, . . .] damage to his reputation, lost wages, and was required to expend substantial amounts of money on attorneys' fees and costs and the costs of GPS monitoring, among other costs." (Compl. ¶¶ 88-89.)

preparing the alleged false confession and forwarding it to prosecutors").

The facts of this case are similar to *Wilkins v. DeReyes*, in which the two plaintiffs were arrested and prosecuted based on false statements coerced from two fellow gang members. 528 F.3d at 793. This Court found that a question of fact existed as to whether the statements were involuntary and false, and whether the officers so knew. *Id.* at 799-801. The Tenth Circuit affirmed, noting that "[i]n the affidavits supporting warrants to arrest [the two plaintiffs], the officers relied entirely on the allegedly coerced false statements[.]" *Id.* at 801. Since the court was required to set aside the false information—*i.e.*, the gang members' statements—nothing was left in the affidavits to support probable cause for the two plaintiffs' arrests. *Id.* Therefore, the Court found that the plaintiffs' allegations, if proven, showed an absence of probable cause for purposes of the third element of their malicious prosecution claim. *Id.* at 802.

Here, Plaintiff alleges that the Individual Defendants knowingly elicited false confessions from Plaintiff, then used those confessions as the basis for prosecution without disclosing their knowledge of the unreliability of the statements. (Compl. ¶ 1.) Specifically, Plaintiff alleges that the Individual Defendants fed Plaintiff specific facts about the July Assault and the Branham Drive Trespass then asked Plaintiff "yes or no" questions regarding the incidents, and asked him to describe the incidents back to them. (*Id.* ¶¶ 22, 28, 55.) They also led Plaintiff to believe that his DNA had been found in locations which implicated him in the crimes (*id.* ¶ 28), and continued to interview Plaintiff after he had been awake for over 24 hours with little or no sleep (*Id.*

¶ 36).  Plaintiff alleges that he was rebuffed by the Individual Defendants when he tried to explain that his confessions had been coerced and that he didn't remember committing the crimes.  (*Id.* ¶¶ 41, 58, 59.)

Plaintiff also alleges that, based on Plaintiff's demeanor and affect, among other things, the Individual Defendants knew that Plaintiff suffered from some type of mental impairment and was of limited intelligence, knew that he was not capable of providing accurate information in response to their questions, and knew that Plaintiff was susceptible to pressure to agree with statements they made to him.  (*Id.* ¶¶ 31, 47, 54, 67.)  Yet, they did not report this information to the District Attorney, or include it in the various court documents used to initiate the proceedings against Plaintiff.  (*See id.* ¶ 34, 73, 75, 76, 80, 93.)

Moreover, Plaintiff contends that, without the false confessions, the Individual Defendants would not have had probable cause to bring charges against Plaintiff.  For instance, Plaintiff alleges that the Individual Defendants knew that Plaintiff did not match the description of the perpetrator of the July Assault.  (*Id.* ¶¶ 27, 30, 37.)

Taking these allegations as true for the purposes of a motion to dismiss, the Court must set aside Plaintiff's allegedly false statements and confessions when determining whether probable cause existed to continue Plaintiff's confinement.  *See Wilkins*, 528 F.3d at 801 (explaining that the court must set aside false information when determining if there is probable cause).  The Court finds that, without these statements and confessions, or with the withheld knowledge of Plaintiff's cognitive limitations, there would have been no probable cause for Plaintiff's continued

confinement or prosecution.  *See Pierce v. Gilchrist*, 359 F.3d 1279, 1295 (10th Cir. 2004) (explaining that plaintiff must prove "that without the falsified inculpatory evidence, or with the withheld exculpatory evidence, there would have been no probable cause for his continued confinement or prosecution").  The Court, therefore, finds that Plaintiff has adequately pled the absence of probable cause element of a Fourth Amendment malicious prosecution claim against the Individual Defendants.

As to the fourth element, malice within the context of malicious prosecution "is any motive other than a desire to bring an offender to justice[.]"  *Montgomery Ward & Co. v. Pherson*, 272 P.2d 643, 646 (Colo. 1954).  "It is not necessary that the plaintiff prove malice directly."  *Crow v. United States*, 659 F. Supp. 556, 573 (D. Kan. 1987).  "Malice . . . may be inferred from the want of probable cause."  *Montgomery Ward*, 272 P.2d at 646.  Additionally, "[f]alsifying or omitting evidence 'knowingly and intentionally, or with reckless disregard for the truth' is sufficient to establish malice" in the context of malicious prosecution claims.  *Carbajal v. Serra*, 2012 WL 4369873, at *13 (D. Colo. Aug. 29, 2012) (quoting *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)).

Plaintiff's conclusory allegation that "Defendants acted with malice" (Compl. ¶ 96) is insufficient, in and of itself, to satisfy this element.  *See Koopman*, 2010 WL 3843300, at *4 (explaining that allegations of malice must not be general or conclusory).  Plaintiff, however, repeatedly alleges that the Individual Defendants "knew that [Plaintiff's] statements were not knowing or voluntary and had been coerced."  (Compl. ¶¶ 24, 31, 47, 54, 67.)  He avers that he attempted to explain that his confessions had been coerced, but was rebuffed by the Individual Defendants.  (*Id.* ¶¶ 41, 42.)  He also

18

alleges that the Individual Defendants withheld material information regarding Plaintiff's cognitive limitations and the resultant unreliability of Plaintiff's confessions in the various court documents used to initiate the proceedings against Plaintiff, and when communicating with the District Attorney.  (*See id*. ¶ 34, 73, 75, 76, 80, 93.)  These allegations are specific and not conclusory.  The Court finds that they are sufficient to establish the malice element of a Fourth Amendment malicious prosecution claim against the Individual Defendants.  *See Barton v. City & Cnty. of Denver*, 432 F. Supp. 2d 1178, 1194–95 (D.Colo. 2006) ("Thus a jury arguably may be able to infer . . . that if the officers supplied false or misleading information to prosecutors, the element of malice is satisfied[.]").

Accordingly, the Court finds that Plaintiff has alleged facts sufficient to state a claim for a violation of his Fourth Amendment right to be free from unreasonable seizures.  *Schwartz*, 702 F.3d at 579.

2.   Clearly Established

Because Defendants have asserted qualified immunity, Plaintiffs are entitled to proceed in this action only if the constitutional violation alleged was clearly established at the time of relevant events.  *Pearson*, 555 U.S. at 232.  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  *Zia Trust Co. ex rel. Causey v. Montoya*, 597 F.3d 1150, 1155 (10th Cir. 2010) (quotation omitted).  The Supreme Court has held that "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in

19

question has not previously been held unlawful." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (quotations and alteration omitted).  The Tenth Circuit has observed that "[t]he *Hope* decision shifted the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional." *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007) (quotations omitted).

As discussed above, the allegations in Plaintiff's Amended Complaint are similar to those in *Wilkins*, a Tenth Circuit case.  *Wilkins* was decided on June 13, 2008—nearly a year before the events at issue here—and is a published decision. Additionally, the prohibition on using false confessions in support of a probable cause determination has long been the law.  *See Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996).  As a result, the Court has little trouble finding that a reasonable officer in the Individual Defendants' positions would have known that using a coerced confession to find probable cause was a violation of Plaintiff's constitutional rights.

Because Plaintiff's Amended Complaint contains sufficient allegations to state a claim for a violation of Plaintiff's clearly established constitutional rights, the Individual Defendants are not entitled to qualified immunity.  *Pearson*, 555 U.S. at 232.

**D.    Eleventh Amendment Immunity**

Defendants argue that the Eleventh Amendment to the United States Constitution precludes Plaintiff from suing the District Attorney's Office and divests this Court of subject matter jurisdiction over this claim.  (ECF No. 32 at 16.)  "If applicable, the Eleventh Amendment bars suits against states in federal court." *Sutton v. Utah*

*State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1231-32 (10th Cir. 1999) (citations omitted).  Only a state or an arm of a state may assert the Eleventh Amendment as a defense to suit.  *Id*. at 1232 (citation omitted).

In *Rozek v. Topolnicki*, the Tenth Circuit held that the District Attorney's Office[7] is an arm of the state, and therefore shares in the state's sovereign immunity.  865 F.2d 1154, 1158 (10th Cir.1989).  Plaintiff argues that *Rozek* is no longer good law because subsequent case law states that District Attorney's offices are political subdivisions and not arms of the state, and as such, are not entitled to Eleventh Amendment immunity. (ECF No. 46 at 19-21.)  The case Plaintiff cites in support, *Davidson v. Sandstrom*, states that District Attorneys are nonjudicial elected officials of their judicial districts and that judicial districts are political subdivisions of the state.  *See* 83 P.3d 648, 654-56 (Colo. 2004).  A subsequent case, *Masters v. Gilmore*, noted that although *Davidson* did not involve a question of Eleventh Amendment immunity, its conclusion that a judicial district is a political subdivision of the state is persuasive authority in the court's analysis of Eleventh Amendment immunity for a district attorney and the judicial district for which he serves.  663 F. Supp. 2d 1027, 1054 (D. Colo. 2009).  The *Masters* court concluded that neither the Eighth Judicial District nor the Eighth Judicial District's District Attorney were entitled to Eleventh Amendment immunity.  *Id.*

The Tenth Circuit, however, has held that *Davidson* did not mean to overturn *Rozek* or the multitude of case law holding that District Attorneys are arms of the state. *Van De Weghe v. Chambers*, 2014 WL 2898489, at *3 (10th Cir. June 27, 2014) ("[W]e

---

[7]  *Rozek* dealt with the very office at issue here—the Office of the District Attorney for the Eighteenth Judicial District.  865 F.2d at 1155.

simply cannot say that *Davidson* meant to throw *Rozek*'s analysis or conclusion overboard."). This Court has also held that, "*Davidson* notwithstanding, the weight of state case law . . . directs a finding of Eleventh Amendment immunity" for the district attorney's office. *Bragg v. Office of the Dist. Atty.*, 704 F. Supp. 2d 1032, 1065 (D. Colo. 2009).

The Court agrees with the weight of state and federal case law, and finds that the District Attorney's Office is an arm of the State of Colorado, and thus protected from suit by the Eleventh Amendment. *See Rozek*, 865 F.2d at 1158 (citing *Beacom v. Bd. of Cnty. Comm'rs*, 657 P.2d 440, 445 (Colo. 1983)); *see also Romero v. Boulder Cnty. D.A.'s Office*, 87 F. App'x 696, 698 (10th Cir. 2004) ("[T]he action is barred by the Eleventh Amendment as it pertains to Quiram in his official capacity and the Boulder County District Attorney's Office."); *Bragg*, 704 F. Supp. 2d at 1067 ("This Court cannot join *Davidson* in singing against the choir and finds that a survey of state law reflects that Defendant is a state agency subject to Eleventh Amendment immunity."); *Musick v. Pickering*, 2005 WL 2739028, at *2 (D. Colo. Oct. 24, 2005) ("As an initial matter, it is abundantly clear that the District Attorney's Office and [Deputy District Attorney] in his official capacity enjoy Eleventh Amendment immunity from plaintiff's federal claims.").

## E.     The BOCC Is A Proper Defendant

Defendants argue that the BOCC is not a proper party because Plaintiff cannot show that the BOCC has supervisory authority over the sheriff and his deputies,[8] and under Colorado law, only a sheriff has the right to supervise and control the sheriff's

---

[8]  The Court notes that Defendants have failed to address this argument in their Reply.

duties.  (ECF No. 32 at 18-19) (citing *Tunget v. Board of Cnty. Comm'rs of Delta Cnty.*, 992 P.2d 650, 652 (Colo. App. 1999).)  Counties, however, "can be held liable for the misdeeds of Sheriffs and their employees when the Sheriff is held to set 'official policy' for the county." *Bristol v. Bd. of Cnty. Comm'rs of Cnty. of Clear Creek*, 312 F.3d 1213, 1221 (10th Cir. 2002) (listing cases where the "acts of the Sheriff were held to set the 'official policy' of the County, thus making the County liable under § 1983 for the Sheriff's unconstitutional actions and those of the Sheriff's employees.").

Here,  Plaintiff alleges that the "policy, custom, and practice of [the BOCC] in failing to properly train [its] employees was the moving force and proximate cause of the violation of [Plaintiff's] constitutional rights and caused [Plaintiff's] damages."  (Compl. ¶ 100.)  Specifically, Plaintiff alleges that the BOCC "knew that Detectives working for the Sheriff's Office would interrogate suspects with disabilities and low IQs during the course of their employment, and knew that failing to specially train them on conducting such interrogations gave rise to a risk of coerced confessions."  (Compl. ¶ 70; *see also id.* ¶ 99.)  Plaintiff also alleges that, despite this, the BOCC "failed to properly train and supervise their employees to avoid the use of coercive interrogation tactics on vulnerable suspects and the pursuit of prosecution based on coerced statements." (*Id.* ¶ 98.)

Because Plaintiff has alleged that County policies caused his constitutional violation, the Court finds that the BOCC is a proper defendant in this case.  *See Grady v. Jefferson Cnty.*, Colo. 2008 WL 178923, at *3 (D. Colo. Jan. 17, 2008) (declining to dismiss claims against the Jefferson County Board of County Commissioners on a Rule 12(b)(6) motion to dismiss).

F.      **Entity Liability**

"A municipality or other local government may be liable under [42 U.S.C. § 1983]

if the governmental body itself 'subjects' a person to a deprivation of rights or causes a

person 'to be subjected' to such a deprivation." *Connick v. Thompson*, 131 S. Ct. 1350,

1359 (2011) (citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 692

(1978)).  "[U]nder § 1983, local governments are responsible only for 'their *own* illegal

acts.'"  *Id*. at 1359 (emphasis in original).  "They are not vicariously liable under § 1983

for their employees' actions."  *Id.*

To prevail on a municipal liability claim, a plaintiff must establish: "(1) that a

municipal employee committed a constitutional violation; and (2) that a municipal policy

or custom was the moving force behind the constitutional deprivation."  *Myers v. Bd. of

Cnty. Comm'rs of Oklahoma Cnty.*, 151 F.3d 1313, 1316 (10th Cir. 1998).  The Court

has already found that Plaintiff has stated a claim against the Individual Defendants for

a Fourth Amendment violation.  Thus, the Court finds that Plaintiff has shown that a

municipal employee may have violated his constitutional rights.  The Court will now turn

to whether a County policy or custom was the "moving force" behind this deprivation.

The existence of a policy or custom can be established many different ways,

including demonstrating the existence of:

> (1) [A] formal regulation or policy statement; (2) an informal
> custom amounting to a widespread practice that, although
> not authorized by written law or express municipal policy, is
> so permanent and well settled as to constitute a custom or
> usage with the force of law; (3) the decisions of employees
> with final policymaking authority; (4) the ratification by such
> final policymakers of the decisions—and the basis for
> them—of subordinates to whom authority was delegated

> subject to these policymakers' review and approval; or (5)
> the failure to adequately train or supervise employees, so
> long as that failure results from 'deliberate indifference' to
> the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784 (10th Cir. 2010) (citation and quotations

omitted).  In the absence of an express policy or an entrenched custom, "the

inadequacy of police training may serve as a basis of § 1983 liability only where the

failure to train . . . amounts to a deliberate indifference to the constitutional rights of

persons with whom the police come into contact."  *City of Canton v. Harris*, 489 U.S.

378, 388 (1989).

The Tenth Circuit has "confirmed that this deliberate indifference standard may

be satisfied 'when the municipality has actual or constructive notice that its action or

failure is substantially certain to result in a constitutional violation, and it consciously

and deliberately chooses to disregard the risk of harm.'"  *Olsen v. Layton Hills Mall*, 312

F.3d 1304, 1318 (10th Cir. 2002) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307

(10th Cir. 1999)).  Although a single incident generally will not give rise to liability, *Okla.*

*City v. Tuttle*, 471 U.S. 808, 823-24 (1985), "deliberate indifference may be found

absent a pattern of unconstitutional behavior if a violation of federal rights is a 'highly

predictable' or 'plainly obvious' consequence of a municipality's action."  *Barney*, 143

F.3d at 1307 (internal citations omitted); *see also Walker v. Wegener*, 2012 WL

4359365, at *10 (D. Colo. Aug. 30, 2012) ("This may be demonstrated when the

municipality has actual or constructive notice that its action or failure to act is

substantially certain to result in a constitutional violation, and it consciously or

deliberately chooses to disregard the risk of harm.").  The official position must operate

25

as the "moving force" behind the violation, and the plaintiff must demonstrate a "direct causal link" between the action and the right violation. *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).  That is, "[w]ould the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect?"  *Canton*, 489 U.S. at 391.

In *Canton*, the Court explained when inadequate police training constitutes city policy:

> [I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.  In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

489 U.S. at 390.  The Court noted:

> For example, city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons.  The city has armed its officers with firearms, in part to allow them to accomplish this task.  Thus, the need to train officers in the constitutional limitations on the use of deadly force, can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights.

*Id.* n. 10 (citation omitted).

Here, Plaintiff alleges that the BOCC and the Sheriff's Office were deliberately indifferent to a training failure, which caused a violation of Plaintiff's constitutional rights. (ECF No. 46 at 24.)  Specifically, Plaintiff alleges that "[i]n the course of her employment with the [Sheriff's Office, Mykes] has received training on interrogation techniques, but she has not been trained regarding how to properly apply those

26

techniques to suspects who may be vulnerable to coercion due to disabilities or low IQ." (Compl. ¶ 70.) Plaintiff further alleges that the BOCC and the Sheriff's Office knew, or should have known, that their employees would use coercive interrogation tactics on vulnerable suspects, but failed to train and supervise their employees as to how to properly apply these techniques. (*Id.* ¶¶ 99, 100.)

Like the example in *Canton*, the BOCC and the Sheriff's Office should know that their police officers will be required to interview suspects who may be vulnerable to coercion due to disabilities or low IQ. *See Canton*, 489 U.S. at 390 n.10. Accordingly, the Court finds that, in this case, the need to train officers in the proper interrogation techniques is "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights. *See id.*

Taking Plaintiff's allegations as true for the purposes of a motion to dismiss, the Court finds that the Amended Complaint supports an inference that the absence of training on proper interrogation demonstrates a deliberate indifference on the part of the County to the constitutional rights of individuals who are subject to interrogation by its law enforcement officers. *See Allen v. Muskogee*, 119 F.3d 837, 842 (10th Cir. 1997). Accordingly, Plaintiff's allegations are sufficient to state a claim against the BOCC and the Sheriff's Office under Section 1983.[9]

## G.    Underlying Constitutional Violation

Defendants argue that the Sheriff's Office may not be held liable because Plaintiff's claim for malicious prosecution against the Individual Defendants fails as a

---

[9] The Court notes that Defendants' argument may be readdressed at the summary judgment phase.

matter of law. (ECF No. 32 at 19 (citing *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993) ("A municipality may not be held liable where there was no underlying constitutional violation by any of its officers.").) Because the Court has already found that Plaintiff has stated a claim against the Individual Defendants for a Fourth Amendment violation, the Court rejects Defendants' argument.

## III. CONCLUSION

1.      Defendants' Joint Motion to Dismiss (ECF No. 32) is GRANTED IN PART and DENIED IN PART;

2.      Plaintiff's claim against the Office of the District Attorney for the Eighteenth Judicial District is DISMISSED WITHOUT PREJUDICE based on Eleventh Amendment Immunity;

3.      The Office of the District Attorney for the Eighteenth Judicial District is removed as a party in this action and the parties shall update the caption accordingly;

3.      The Motion is denied in all other respects; and

4.      This action shall proceed on Plaintiff's claim for violation of the Fourth Amendment against Detective Joe Ryan Hartley, Detective Ryan Wolff, Detective Mike Duffy, Detective Heather Mykes, Investigator Michael Dickson, the Board of County Commissioners of Douglas County, and Douglas County Sheriff's Office.

Dated this 20th day of August, 2014.

BY THE COURT:

_____
William J. Martínez
United States District Judge